**HUBER et, Plaintiffs, v. VILLAGE OF RICHMOND HEIGHTS, Defendant.**

Common Pleas Court, Cuyahoga County.

No. 643349.   Decided February 8, 1954.

W. D. Cole, Cleveland, for plaintiffs.
Roland A. Haskin, Ronald Berg, Cleveland, for defendant.

## OPINION

By FULTON, J:

Plaintiffs, owners of a sub-divided or allotted parcel of land in the Village of Richmond Heights, seek, by a declaratory judgment action, to obtain a judicial interpretation as to the validity or invalidity of an ordinance of that village.

The ordinance deals with roads, streets, ways and lanes: (1) when, how and upon what conditions they will be accepted as publicly dedicated; and (2) when, how and upon what conditions (a) private roads, etc., may be laid out and used, and (b) land fronting upon such private roads may be **sold.**

The village meets the issue by claiming that the ordinance is valid, and additionally interposes two procedural defenses, namely: a defect in and misjoinder of parties. The procedural defenses are predicated on the fact that others own land in the sub-division upon the private roads involved, and that others than plaintiffs and defendants are interested in the determination sought; and under §12101-11 GC (§2721.12 R. C.) governing declaratory judgments, such other persons should be parties. A demurrer on these grounds was overruled (Thomas, J.).

Plaintiffs are owners of substantial property in this sub-division. The defendant is the municipality whose entity embraces all property within, owners thereof, as well as all residents and citizens of the village.

These procedural defenses are swept away as inconsequential. The validity or invalidity of the ordinance is **THE** important question.

The legislation is designated:

"An ordinance to establish specifications for public and private roads within the Village of Richmond Heights."

Its first section follows:

"Section 1. No road, street, highway, lane, boulevard or other way will be accepted for dedication within this village unless it has been improved in accordance with the cross sections and specifications attached hereto and made part thereof."

Its second section is recited:

"Section 2. No person, firm or corporation shall lay out or use any private road, street, highway, lane or boulevard for access to more than one dwelling house, or sell or offer for sale more than one lot or parcel fronting on any private road, street, highway, lane or boulevard, unless such private road, street, highway, lane or boulevard has been improved in accordance with said cross sections and specifications attached hereto and made a part hereof."

Its third section provides:

"Said cross sections and specifications are as follows:"

(The specifications are then set forth in detail.)

Great latitude for receipt of evidence (testimony and documents) was allowed in order to ascertain (1) the situation out of which the legislation developed, (2) the problem to which the legislation is applicable, and (3) the relationship between the legislation and the health, safety, morals and welfare of the village and its community including its residents and citizens. The impact of the evidence helped on all three points.

The specifications set forth in Section 3 of the ordinance, under the evidence, are not unreasonable. They appear to form a proper basis for acceptance by the village of dedicated streets. Plaintiffs have failed by proper preponderance of the evidence to show that these specifications are unreasonable.

Section 1, therefore, falls within the exercise of the police power by the village. It is valid legislation.

Section 2 is not so easy of solution. Its language forbids any person or **corporation** from (a) laying out of or (b) using any private road for "access to more than one dwelling house," or (c) selling or offering for sale of "more than one lot or parcel fronting on any private road, street, highway, lane or boulevard," unless such private way is constructed conformable to the specifications in Section 3.

The community of Richmond Heights is quite rural. There are still farms as well as unused raw acreage within the municipality.

Suppose one owned a lot or parcel of raw acreage with one house fronting on his private lane leading from his house to the nearest public road in the village. Assume also that he desired to build on that private land two other homes for the families of his son and son-in-law. Section 2 forbids because the private road would be used by the hypothetical father-in-law (land owner) "for access to more than one dwelling house."

This section also would forbid this same land owner from selling or offering to sell two portions of this land fronting on this lane to strangers A and B, although he knew not the use to which A and B might put such land after their respective purchases.

Thus far the problem has been considered abstractly and upon hypotheses. Now consideration of the impact of the evidence upon the problem and of the existing law to the situation is undertaken. On this voyage the Court is not unmindful that even a court of last resort, much less a trial court, will not strike down legislation unless absolutely required by all existing circumstances (Lieux v. Westlake, 153 Oh St 646): that perhaps a trial court should never invalidate nor devitalize legislation if there is the slightest doubt about its invalidity, absent a certain and absolutely authoritative guide (Westlake v. Elrich, 52 Abs 538); and that no complainant may reasonably expect an adjudication of invalidity of legislation unless that legislation produced a present infringement of the complainant's rights (Ambler Realty v. Euclid 272 U. S. 365).

The Village of Richmond Heights presently has no general or complete water system. It has no sanitation sewage system.

In the allotment owned by the plaintiffs are three private ways. These were laid out by plaintiffs. One is laid out but not graded. Two are not only laid out but are fully constructed under plaintiffs' specifications. These two streets are at right angles to each other. One of these leads to Highland Road and the other leads to Richmond Road. Their construction does not meet the specifications of Section 3 of the ordinance. These two streets were graded, drained and graveled prior to 1946. Ordinance 241, here involved, was passed in 1947. These roads were additionally surfaced thereafter. The cost to the plaintiffs of platting, grading and draining as well as the installation of gravel to the depth of eight inches slightly exceeded $15,000.00. This cost did not include the additional surfacing by slag to the depth of two or three inches in 1952.

The present cost of completely rebuilding these roads alone would now be more than the $12.00 per running foot. As plaintiffs say, by brief, the lot values on these streets do not exceed $20.00 per foot front. This gets perilously close to confiscation; but the evidence is that the two roads, now finished do not require complete rebuilding; and that Mr. Oviatt built roads in his allotment across the street in accordance with these ordinance specifications or at least with like specifications without apparent business detriment. On the whole plaintiffs fail, by the requisite burden, to preponderate on this question.

The drainage was accomplished by the installation of culverts and sewers. These roads are generally usable and passable. They do and will support ordinary vehicular travel. There is some opinion testimony that in the spring of the year they might not, as well as a strong hint that they will not, support a fire truck or a garbage collection truck, but there is no evidence of the kind, size or character of the fire or garbage trucks to which reference was made, or whether the municipality owns either. The Court presumably is expected to, and does, take judicial notice that the references are to such characteristic vehicles in general use in municipalities in Cuyahoga County. There is evidence that these private streets will not impair nor interfere with the installation of public utility services such as light, telephone, gas and water.

Plaintiffs' land is upon these private roads. The legislation as applied to these roads does impinge, and as other courts have said, infringe upon plaintiffs' present rights, namely, to use these private roads, to install in the future additional private roads, and to sell and offer for sale their land by parcels or lots fronting upon these or such roads. Therefore, plaintiffs may rightfully address themselves to the alleged invalidity of this ordinance and its infringement, if any, upon these rights determined.

It is not too difficult to perceive how the prohibited right to construct and use for "access to more than one dwelling house" a private road unless built in accordance with reasonable specifications is in the interest of the health, morals, safety and welfare of the community.

Fire protection, disease prevention, and travel safety are modern "MUSTS." As municipal communities grow these "MUSTS" are ever increasing. The "horse and buggy days" are gone forever. Therefore the prohibition against laying out of private roads for "access to more than one dwelling house" or the use of such roads for such purpose unless the roads meet the requirements of Section 3 is valid legislation.

However, it is most difficult to perceive how the prohibited sale of land on private roads not conforming to specifications contained in Section 3 is anything except an unlawful interference with one's property rights—and as applied here to plaintiffs' property rights it amounts to the taking of plaintiffs' property without just compensation. As head-note or syllabus 3 of the case of **State, ex rel. Weber, et al., v. Vagner Building Commissioner, 92 Oh Ap 233,** recites:

"Such restraint can not totally prevent the owner from making some reasonable use of his property in the absence of proven necessity of the public's interest."

Legislation in restraint of alienation—indeed in restriction of use—of real property is strictly construed and all doubts are resolved in favor of the property owner, **37 O. Jur. 726.**

The Court considers the prohibition against sale in Section 2 of the ordinance to be invalid legislation.

The two prohibitions contained in the section of the ordinance against (a) laying out and using a nonconforming private road for "access to more than one dwelling house" and (b) the selling or offering for sale of more than one lot or parcel on such nonconforming private road are separable. The former separated is valid; the latter separated is invalid. Counsel for plaintiffs impliedly concedes that no court should ever strike down legislation unless it is absolutely required. But he cites State, ex rel Weber, supra, as a clear guide to strike down the whole ordinance or at least all of Section 2. At first blush it seems to be a guide. There the Court of Appeals of Cuyahoga County had under consideration a Zoning Ordinance of Orange Village. One section of that ordinance prevented the **construction** of a dwelling house upon any street unless dedicated and accepted as a public street. There the court struck down that provision because it discovered that the evidence did not disclose what the minimum requirements were or were to be for the acceptance of a dedicated street; and, therefore, the court was unable to determine whether the requirements for dedication were reasonable or prohibitive. There the action was brought by a property owner who sought a writ of mandamus to cancel the issuance of a building permit. The court thought the pressure of that provision of the Orange Zoning Law was "being applied in the. wrong place." It implied strongly that the pressure should be placed against the allotter or the owner of the allotment and not the property owner. Here the street specifications are known. They are found to be reasonable and relief is not sought by an owner of a lot who desires to build thereon.

Counsel for the village cites many authorities involving legis-

lative restraint against building construction on "other than specified roads." Here we deal with street legislation **only.** Those authorities are not helpful on the question of the right to sell land on "other than specified roads."

However, the additional claim by the village is that the platting statutes §3580 et seq, **GC** (§711 et seq, **R. C.**) before amendment in October, 1953, as well as the Village Platting Ordinance 23, have been violated by plaintiffs. Though true this does not resolve the problem here presented. At all times this sub-division was known to the municipal fathers and residents as well. At all times negotiations continued between the municipal fathers and plaintiffs. Moreover, that platting Ordinance No. 23 dealt with sub-division plats and street openings and improvements and not with the sale of land

The further claim is that the amended platting statutes enacted in October, 1953, as implemented by local regulation, Ordinance 23 passed in 1922, is now and will continue to be violated. The amended statutes provide for local regulatory implementation. One should suppose that such implementation should post-date and not ante-date the statutory authority therefor. Those statutes operate prospectively, as opined by Attorney General (Ohio Bar Jan. 4, 1954 issue).

But counsel for the Village have another string to their bow. The claim is that if the prohibited sale of Section 2 of the ordinance is held invalid then in effect the court holds the similar prohibition of the new platting statutes invalid. The ordinance here is not a general platting ordinance. It is a street ordinance. Moreover, the prohibition against sale contained in the new platting statutes arise from a non-recordation of a plat of a "sub-division." The Attorney General's opinion in December 14th, 1953, Ohio Bar, pages 863 and 877 both inclusive, concludes that recordation is required of plats of a "historical" sub-division, i. e., an addition to a municipal corporation; but recordation is not required of "conventional" (this Court's distinguishing word) sub-division as defined in §711.001 **R. C.** unless implemented by local rule or regulation. Recordation is permissive and not mandatory under these statutes. With this view the court is in accord.

Municipalities may legislate, in the interest of its residents how private roads may be built. The specifications in Section 3 are equally reasonable for the construction of private roads. Here the real vice is restraint against sale. (One perceives another theoretical vice as to **"use,"** namely, the municipal **corporation** is prohibited from using these private roads to attend a fire at or collect garbage from "more than one dwelling

house," on these private streets or elsewhere in the village.)

From a practical standpoint the decision that only the selling part of section 2 of this ordinance is invalid is not too helpful to plaintiffs. Buyers may become scarce. These buyers may think the concern about the private roads is theirs as is so well stated by the Cuyahoga County Court of Appeals in the Vagner case, supra, at page 237, as follows:

"If the condition of the highway upon which a residence is situated should limit or prevent the village from rendering an otherwise available municipal service, such limitation or denial of service should be the concern of the householder and not the village."

These prospective buyers may think, quite properly, it is their concern rather than plaintiffs' concern. Plaintiffs' property may not, as Mr. Oviatt stated, be readily salable. From an equally practical standpoint, the limited decision is not too helpful to the municipality unless it recognizes that the "prohibited selling" portion of Section 2 should expressly be "prohibited construction" upon a road not built in accordance with express and known specifications, reasonable in character.

(Parenthetically, by way of passing, and indeed aside from the necessity of this decision, some gratuitous observations are now indulged. It is worthy of repetition that plaintiffs laid out these private roads before the legislation was passed. It is worthy of note that there is no evidence that plaintiffs are allotter-builders. The evidence is that they are allotter-sellers. Therefore plaintiffs are not using, nor does it appear that they intend to use, these private roads as "access to more than one dwelling house." There might arise a serious question whether any vendee from plaintiffs of one lot or parcel on which he constructs only one dwelling house fronting on such private road could be said to be using such private road for "access to more than one dwelling house"—he would be using it for access to his own, namely, one dwelling house. Logically this applies to each and every vendee and all vendees from plaintiffs unless some one vendee sought to build two or more dwelling houses and use the private road as access to them. This seems true even if title to each opposite lot extends to the center of the highway and if dwelling houses were built upon such opposite lots, because each house dweller would be using the private road for access to his separate dwelling house. The allotter-seller is not using but the allotter-builder would be using the private way for "access to more than one dwelling house." The purpose sought is clear, and the objective desired is discernible—yet the query: does the language aptly, under rules of law, accomplish that purpose and objective.)

The Court finds from a preponderance of the evidence that—

1. Plaintiffs are owners of the land involved in this lawsuit; and such land is allotted and sub-divided.

2. No plat of this subdivision was ever formally filed, registered or recorded with or approved by the municipality or its officers.

3. The existence of the sub-division was always known to the municipality and its officers.

4. Negotiations between plaintiffs and the municipality through its officers was continuous with respect to roads in the sub-division how they should be constructed and in connection therewith the municipality had plats and street profiles in their possession from time to time.

5. Plaintiffs have laid out three private roads and constructed two in this sub-division. The two completed roads were constructed before Ordinance 241 was adopted.

6. Specifications for the construction of these private roads as suggested by municipal officials equaled or exceeded the requirements of Section 3 of the Ordinance.

7. The specifications of Section 3 are reasonable.

8. The private roads, as built by plaintiff, do not conform to the specifications of Section 3 or to those previously suggested.

9. Nothing to indicate that plaintiffs have ever built or plan to build a dwelling house on their property in said sub-division.

10. The Village waived any claim that the Attorney General should be notified of the pendency of this proceeding which involves the alleged invalidity of an ordinance.

This Judge considered and studied all of the cited authorities and hopes that his analysis of them is reasonably accurate. As a result thereof and on basis of facts, the Court concludes that:

1. The subject matter of this lawsuit is appropriate for declaratory judgment.

2. Plaintiffs are proper parties to bring this action.

3. The municipality rightfully could and did legislate respecting specification for both public and private roads and streets.

4. Section 3 of the Ordinance 241 contains reasonable specifications and is valid.

5. Section 1 of said ordinance respecting public roads and streets is valid.

6. Section 2 of said ordinance is separable.

7. That portion of Section 2 which prohibits the laying out and the use of a private road, etc., as "access to more than one dwelling house" not in compliance with Section 3 is valid.

8. The portion of Section 2 which prohibits the sale or offering for sale of more than one lot or parcel on a non-complying private road is invalid.

A journal entry should be prepared including the foregoing findings and conclusions and containing appropriate exceptions to both sides.

Formal entry will be decree for plaintiffs, costs assessed against defendant; exceptions to all parties.  O. S. J.